UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

Instead Sciences, Inc.,                        )
                                               )
                   Plaintiff,                  )
                                               )          Civil Action No.
             v.                                )          08 CV 5236 (DLC)
                                               )
ReProtect, Inc., Ultrafem Inc., Dr. Richard Cone, )
and Dr. Thomas Moench,                         )
                                               )
                   Defendants.                 )

--------------------------------------------------------------------X

## THE REPROTECT DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Eric J. Lobenfeld (EL-4560)
Dillon Kim (DK-4121)
**HOGAN & HARTSON LLP**
875 Third Avenue
New York, NY 10022
Phone: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendants*
*ReProtect, Inc., Dr. Richard Cone,*
*and Dr. Thomas Moench*

# **TABLE OF CONTENTS**

**Page**

Preliminary Statement ............................................................................. 1

Statement of Facts .................................................................................. 2

    A.    The Parties ............................................................................... 2

    B.    Ultrafem Licenses ReProtect's Intellectual Property in 1996 .......... 3

    C.    Ultrafem Files for Bankruptcy and Sells Some of its Assets
          but Specifically Excludes the 1996 Agreement from the Sale ......... 7

    D.    After Ultrafem's Default on the 1996 Agreement and
          Subsequent Bankruptcy, ReProtect Solely Continued to
          Develop the Intellectual Property ................................................. 8

ARGUMENT .......................................................................................... 10

PLAINTIFF'S CLAIMS AGAINST THE REPROTECT DEFENDANTS
    (COUNTS 1, 2, 3, 4, AND 6) SHOULD BE DISMISSED .................... 10

    A.    Motion To Dismiss Standard ....................................................... 10

    B.    Counts 1, 2, and 3 of the Complaint Should be Dismissed ............. 11

          1.    Akcess, and consequently Instead, gained no rights to
                the 1996 Agreement during the Ultrafem bankruptcy
                proceedings. ........................................................... 11

          2.    The 1996 Agreement does not confer any licenses that
                survive termination of the license. ........................... 13

          3.    Instead's claims are barred under the statute of
                limitations. ............................................................ 15

    C.    Count 4 of the Complaint Should be Dismissed ............................ 17

          1.    There can be no breach of the Non-Compete Agreement
                because the agreement was not transferred to Akcess or
                Instead. .................................................................. 17

    D.    Count 6 of the Complaint Should be Dismissed ............................ 17

          1.    Instead's Complaint fails to state a claim against
                ReProtect for tortious interference with a contract. .......... 17

2.    Instead's tortious interference claim is barred by the
       statute of limitations. ............................................................18

CONCLUSION ..........................................................................................................19

<u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998) ......................................................................... 10

*Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC*,
    No. 07 Civ 7998, 2008 WL 1710910 (S.D.N.Y. April 10, 2008) ......................... 17

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ......................................................................... 1, 9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ......................................................................... 9

*Cunningham v. Insurance Co. of N. Am.*,
    521 F. Supp. 2d 166 (E.D.N.Y. 2006) ......................................................... 15

*Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.*,
    No. 07-CV-0400, 2008 WL 852787 (S.D.N.Y. Mar. 31, 2008) ................... 10, 18

*Fitzpatrick v. Sony-BMG Music Entm't, Inc.*,
    No. 07-2933, 2007 WL 2398801 (S.D.N.Y. Aug. 15, 2007) ......................... 17

*G-I Holdings, Inc. v. Baron & Budd*,
    179 F. Supp. 2d 233 (S.D.N.Y. 2001) ......................................................... 18

*In re The Penn Traffic Co.*,
    524 F.3d 373 (2d Cir. 2008) ......................................................................... 12

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ......................................................................... 18

*Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*,
    No. 98 CIV 2570, 2000 WL 648162 (S.D.N.Y. May 19, 2000) ................... 10

*National Labor Relations Board v. Bildisco and Bildisco*,
    465 U.S. 513 (1984) ......................................................................... 11

*Official Comm. of Unsecured Creditors of HMKR, Inc. v. Homemaker Indus.*,
    *Inc. et al.* (*In re HMKR*), No. 99-B-10968 (RDD); No. 01-B-3625, 2003
    WL 21696521 (Bankr. S.D.N.Y. July 18, 2003) ......................................... 12

*Penthouse Int'l Ltd. v. Dominion Fed. Sav. & Loan Assoc.*,
    855 F.2d 963 (2d Cir. 1988) ......................................................................... 17

*Porwick v. Fortis Benefits Ins. Co.,*
     *No. 99 CV 10122*, 2004 WL 2793186 (S.D.N.Y. Dec. 6, 2004) ......................................15, 16

*Stone v. Williams,*
     970 F.2d 1043 (2d Cir. 1992) ................................................................................................15

*United States v. Liranzo,*
     944 F.2d 73 (2d Cir. 1991) ....................................................................................................10

*Weizmann Inst. of Sci. v. Neschis,*
     229 F. Supp. 2d 234 (S.D.N.Y. 2002) ...................................................................................18

Statutes

N.Y.C.P.L.R. § 214(4) (McKinney 1990) ........................................................................................18

11 U.S.C. 365(b)(1) ..........................................................................................................................11

11 U.S.C. 365(f) ...............................................................................................................................11

Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................................................1, 10

Defendants ReProtect, Inc. ("ReProtect"), Dr. Richard Cone, and Dr. Thomas Moench (collectively, the "ReProtect Defendants") submit this Memorandum of Law in support of their Motion to Dismiss in its entirety the Complaint of plaintiff Instead Sciences, Inc. ("Instead" or "Plaintiff") as against the ReProtect Defendants[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## Preliminary Statement

Instead's Complaint centers on alleged rights it claims to have obtained when Defendant Ultrafem, Inc. ("Ultrafem") went into bankruptcy in 1998. Previously, Ultrafem had entered into a License, Research and Product Development Agreement dated February 8, 1996 (the "1996 Agreement") with ReProtect to research and develop female contraceptive and STD prevention methods and devices. The collaboration between Ultrafem and ReProtect involved both companies' intellectual property and resources. Shortly after the 1996 Agreement was signed, however, Ultrafem defaulted in its payment obligations to ReProtect, and sought bankruptcy protection. During the course of the bankruptcy proceedings, Ultrafem entered into an Asset Purchase Agreement ("APA"), pursuant to which a substantial portion (but not all) of Ultrafem's assets were sold to a company called Akcess Pacific Group, LLC ("Akcess"). Significantly,

---

[1]    Count 5 of the Complaint does not assert a claim against the ReProtect Defendants and thus is outside the scope of this motion. The ReProtect Defendants seek dismissal of Counts 1-4, and 6 of the Complaint, the sole counts asserted against them.

[2]    The facts pertinent to this motion are set forth in the accompanying declaration of Dr. Thomas Moench ("Moench Decl."), sworn to the 30th day of July 2008, and the exhibits attached thereto. Because the Complaint necessarily relied on the attached documents, this Court may consider them without transforming this Rule 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("For purposes of [a motion to dismiss], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. … Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint.") (internal quotations and citations omitted).

among the assets of Ultrafem that were <u>not</u> acquired by Akcess, was the 1996 Agreement, which is expressly listed in the APA as an "Excluded Asset" from the purchase agreement with Akcess. In short, neither the 1996 Agreement, nor any of the rights that Ultrafem had been granted in the 1996 Agreement, passed to Akcess. According to the Complaint, Akcess assigned all of its rights acquired in the Ultrafem bankruptcy to Plaintiff Instead. Obviously, Instead did not acquire any rights Akcess did not have, including, as shown below, rights under the 1996 Agreement. In fact, Instead does not allege anywhere in its Complaint that it or Akcess has <u>ever</u> made the monthly payments to ReProtect specified in the 1996 Agreement.

The Court should dismiss Instead's Complaint against the ReProtect Defendants because it fails to state a claim in light of the unambiguous language of the APA. The APA unequivocally states that the 1996 Agreement was an "Excluded Asset" and thus did not confer any rights on Akcess. Instead has no legally viable claim to any of the 1996 Agreement rights. Furthermore, although Instead's Complaint alleges, without citation to the 1996 Agreement, that certain rights under the 1996 Agreement survive its termination, the unambiguous license language belies Instead's allegations.

Finally, the Court should dismiss the Complaint in any event, because the events giving rise to this litigation occurred more that 8 years ago. The Statute of Limitations bars all possible claims arising from the 1996 Agreement and the APA, assuming <u>arguendo</u> that Instead was somehow injured by any act of the ReProtect Defendants.

## **Statement of Facts**

### A.    **The Parties**

Plaintiff Instead Sciences, Inc. is, according to its Complaint, a corporation and a resident of the State of California. (Complaint, Moench Decl., Exh. A, ¶ 5.)

Defendant ReProtect, Inc. is a Delaware corporation in the business of developing

women's reproductive health products with its principal place of business at 703 Stags Head Road, Baltimore, MD 21286. (Moench Decl. ¶ 3-4.) Defendant Dr. Richard Cone is the Chairman of ReProtect's Board. (Moench Decl. ¶ 2.) Defendant Dr. Thomas Moench is the President and Chief Operating Officer of ReProtect. (Moench Decl. ¶ 1.)

**B.**      **Ultrafem Licenses ReProtect's Intellectual Property in 1996**

On June 29, 1994, inventors Dr. Thomas R. Moench and Dr. Richard A. Cone, defendants in this action, filed patent application 08/266,777 with the United States Patent Office. The Patent Office issued U.S. Patent numbers 5,592,949 ("the '949 patent") and 5,617,877 ("the '877 patent") from this one patent application. The '949 patent relates to a device to control pH in the vagina for contraception, and to reduce disease risk and the '877 patent relates to a gel-based method for contraception, and to reduce disease risk. Before the '949 and '877 patents issued, Drs. Moench and Cone assigned all rights in the inventions to ReProtect. (Moench Decl. ¶ 4.)

Ultrafem owned certain intellectual property related to a feminine hygiene device (the "Feminine Cup"). (1996 Agreement, Moench Decl. Exh. D, at pg. 1.) The Feminine Cup was a vaginal delivery device for vaginal treatment and protection. (*Id.*) Ultrafem sought to develop the Feminine Cup in combination with the buffer gel described in ReProtect's '949 and '877 patents (the "Acidic Buffer") and further sought a research and development relationship with ReProtect. (*Id.*)

On February 8, 1996, ReProtect entered into a License, Research and Product Development Agreement ("1996 Agreement") with Ultrafem. In the 1996 Agreement, Ultrafem recognized that ReProtect is "the owner of an invention (the 'Acidic Buffer') covered by a patent application filed June 29, 1994" and that "Ultrafem desires to license the Acidic Buffer and

certain other intellectual property owned by ReProtect for certain applications." (1996 Agreement, Moench Decl. Exh. D, at pg. 1.)

Under the 1996 Agreement, ReProtect granted Ultrafem certain rights, including (1) a Research and Development License ("R&D License"); (2) a "Cup License"; and (3) a "Gel License". (1996 Agreement, Moench Decl. Exh. D, ¶ 1 (a)(i),(ii), and (iii).) The R&D License provided that ReProtect would engage in certain research and development activities for Ultrafem. The R&D License also granted Ultrafem the right to commercially exploit all of ReProtect's right, title, and interests in all technology, know-how, inventions, discoveries, ideas, innovations, concepts, information, data, and/or production and/or applications to the extent such items are physical components of or improvements to the Feminine Cup. (*Id.* at ¶ 1 (a)(i).) In consideration for the R&D License, Ultrafem agreed to pay $40,000 per month commencing on the third business day after Ultrafem's initial public offering and continuing through the "Term" of the 1996 Agreement. (1996 Agreement, Moench Decl. Exh. D, ¶ 1(b)(i).) Those payments increased to $83,300 following certain milestones. (*Id.*)

The "Cup License" granted Ultrafem a license to produce, manufacture, develop, bring to market, sell and/or commercially exploit the Feminine Cup with ReProtect's Acidic Buffer. (*Id.* at ¶ 1 (a)(ii).) In consideration for the Cup License, Ultrafem agreed to pay ReProtect $100,000 and grant ReProtect certain stock options. (*Id.* at ¶ 1(b)(ii).)

The 1996 Agreement also included a non-exclusive "Gel License" where Ultrafem was granted rights in certain countries to develop, use, market, sell, sub-license, subcontract, manufacture, distribute and otherwise commercially exploit all of ReProtect's right, title, and interest in the Acidic Buffer itself without any device. (*Id.* at ¶ 1 (a)(iii).) In consideration for

the Gel License, Ultrafem agreed to pay ReProtect $100,000 and grant ReProtect certain stock options.  (*Id.* at ¶ 1(b)(iii).)

In addition, the 1996 Agreement included a Non-Competition agreement ("Non-Compete Agreement") which prohibited ReProtect from marketing any vaginal product which is competitive with (i) any vaginal product which Ultrafem is then marketing or (ii) any vaginal product which Ultrafem has the right (or an option to obtain the right) to market and with respect to which an application for Phase I clinical trials has been submitted to the FDA.  (1996 Agreement, Moench Decl. Exh. D, ¶ VI(e).)  With respect to any vaginal product which utilizes the Acidic Buffer or any component thereof whose purpose is contraception, protection or prevention of STDs, or as a therapy for treating and/or preventing vaginal yeast or bacterial vaginosis, the Non-Competition Period would end on the latest to occur of (i) "two years after the earlier of the end of the Term or after termination of this Agreement pursuant to paragraph IV(b) or (c) hereof"; and (ii) "the date Ultrafem does not have any obligation to pay any royalties pursuant to either paragraph I(b) or paragraph I(c)."  (*Id.*)

Section IV of the 1996 Agreement sets the Term of the licenses.[3]  (1996 Agreement, Moench Decl. Exh. D, ¶ IV.)  Section IV(a) states that the "Agreement shall commence as of the date hereof [February 8, 1996] and shall terminate on the tenth anniversary of the First Payment Date (the 'Term') unless terminated sooner in accordance with the provisions of this paragraph IV."  (*Id.* at ¶ IV(a).)  The First Payment Date is defined in Section I(b)(i) of the 1996 Agreement as "the first payment to be made on the third business day after consummation of Ultrafem's initial public offering," which in fact occurred on February 27, 1996.  (*Id.* at ¶ I(b)(i); Moench

---

[3] The Complaint refers to the licenses as if they were separate from the 1996 Agreement itself, despite the fact that the 1996 Agreement is a unitary whole.  Nevertheless, for the convenience of the Court and ease of responding to Plaintiff's claims, we discuss the licenses herein as if they were separate.

Decl. ¶ 5.) Thus, aside from its not being acquired by Akcess in the bankruptcy, as explained

infra at Section C, the 1996 Agreement has in any event expired by its own terms.

Section IV(d) further states:

> (d)    …. In addition, upon termination of this Agreement for any
> reason, Ultrafem shall have the right, in its sole discretion, to
> continue the licenses granted by ReProtect pursuant to paragraph
> I(a) [the R&D License, the Cup License, and the Gel License]
> hereof with respect to any or all inventions, products, uses or
> application which at the date of such termination are licensed by
> ReProtect to Ultrafem application which at the date of such
> termination are licensed by ReProtect to Ultrafem hereunder and
> either (i) with respect to which an application has been submitted
> to the FDA regarding Phase II clinical trials or (ii) which are being
> marketed by Ultrafem anywhere in the world, in consideration of
> the payment by Ultrafem to ReProtect of the royalties provided in
> this Agreement with respect to such product.

(Id. at ¶ IV(d) (emphasis added).)

Ultrafem never submitted an application to the FDA which was in Phase II clinical trials.

(Moench Decl. ¶ 5.) Ultrafem also never marketed any product incorporating any ReProtect

intellectual property. (Id.) Ultrafem additionally failed to make its March 1998 royalty payment

under the 1996 Agreement. (Id.) On March 10, 1998, ReProtect notified Ultrafem that it was in

default of the 1996 Agreement and that the license was terminated. Ultrafem acknowledged its

default and the termination. (Id.; Moench Decl. Exhs. H and I.)

Finally, Schedule 1.4 (Excluded Assets) of the APA identifies the 1996 Agreement, and

explicitly states that: "Seller [Ultrafem] has not made payments required thereunder for the

months of March, April, May, and June 1998, and Seller is in default thereunder." (APA,

Moench Decl. Exh. C.)

C.    <u>Ultrafem Files for Bankruptcy and Sells Some of its Assets</u>
      <u>but Specifically Excludes the 1996 Agreement from the Sale</u>

On April 1, 1998, Ultrafem commenced a case under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. (Complaint, Moench Decl., Exh. A, ¶ 27.) On June 12, 1998, Ultrafem and Akcess entered into the Asset Purchase Agreement. (APA, Moench Decl. Exh. C.) The APA states that "Buyer [Akcess] shall purchase from the Seller [Ultrafem], the following properties, and assets of Seller (collectively the 'Assets')." Section 1.4 of the APA, entitled "Excluded Assets," lists in Schedule 1.4 those assets of Ultrafem that Akcess did not acquire in the APA. <u>Schedule 1.4 specifically lists as an Excluded Asset "Agreement dated as of February 8, 1996 between Seller and ReProtect, LLC."</u> Regarding the 1996 Agreement and Ultrafem's obligations thereunder, Schedule 1.4 also states: "Seller [Ultrafem] has not made payments required thereunder for the months of March, April, May, and June 1998, and Seller is in default thereunder."

Further, Section 1.1(a) of the APA, which references those intangible assets of Ultrafem that <u>were</u> acquired by Akcess, states:

> (a)    All of Seller's right, title and interest in and to the patents, copyrights, trademarks, service marks, and trade names, and all applications therefore, whether U.S. or foreign, and franchises, goodwill and other intangible property (collectively, the "Intangibles"), the material items of which are listed on Schedule 1.1(a), including but not limited to, product formulas, research and development, trade secrets and know how.

(APA, Moench Decl. Exh. C.) Significantly, ReProtect's '949 or '877 patents are not listed in Schedule 1.1(a) as an acquired asset, nor does the Schedule make any reference to any of the licenses (R&D License, Cup License, or Gel License) from ReProtect included in the 1996 Agreement.

Similarly, section 1.3(a) of the APA, entitled "Assumed Liabilities and Retained Liabilities" states:

> (a)    At the Closing, Buyer [Akcess] assumes and agrees to perform, pay as they become due and discharge the liabilities, obligations and commitments of the Seller relating to and under the contracts, licenses, leases, and agreements specifically identified (i) in Schedule 1.3, and (ii) by Buyer in writing between the date hereof and the Closing Date (collectively, "Assumed Contracts"), which Buyer in its sole discretion elects to assume as of the Closing Date, to the extent that such liabilities, obligations and commitments arise after the Closing (collectively, the "Assumed Liabilities").

(APA, Moench Decl. Exh. C.)  Schedule 1.3 contains no reference to the 1996 Agreement or any other licenses from ReProtect.

On June 26, 1998, the United States Bankruptcy Court for the Southern District of New York signed the Order approving the June 12, 1998 APA between Ultrafem and Akcess ("June 1998 Order").  (Moench Decl. Exh. B.)  Akcess thereafter assigned its rights under the APA to Instead, which the Complaint herein specifically states was a "wholly related entity." (Complaint, Moench Decl., Exh. A, ¶ 37.)  Neither Instead nor Akcess has ever made any payments to ReProtect under the 1996 Agreement.  (Moench Decl., ¶ 5.)

Despite the foregoing, the Complaint seems to suggest, as best as can be discerned, that the Cup License, the Gel License, and the Non-Compete Agreement were somehow excised from the 1996 Agreement and assigned to Akcess under the APA, despite the conceded fact that the document that contained these licenses was not acquired by Akcess in the bankruptcy and, indeed, was expressly excluded.

**D.    After Ultrafem's Default on the 1996 Agreement and Subsequent Bankruptcy, ReProtect Solely Continued to Develop the Intellectual Property**

During the years following the Ultrafem bankruptcy, ReProtect continued its research and development efforts using the Acidic Buffer.  In February 2003, almost five years after the

execution of the APA, Mary Frost, then-President of Instead, suddenly wrote Thomas Moench and ReProtect regarding the 1996 Agreement.[4]  (Moench Decl., Exh. F.)  In that letter, Ms. Frost asserted, contrary to the unambiguous language of the APA, that: "Instead, Inc. acquired all the scheduled assets of the bankruptcy estate of Ultrafem, Inc.  One such asset was a License, Research and Product Development Agreement with ReProtect, LLC," i.e., the 1996 Agreement. (*Id.*)  On March 11, 2003, Thomas Moench and ReProtect replied to Instead's letter, pointing out that the 1996 Agreement was terminated in connection with the Ultrafem bankruptcy.  (Moench Decl. Exh. G.)  Instead did nothing in response to Dr. Moench's letter; rather, more than five years later, it commenced this suit.[5]

Despite (1) the identification of the 1996 Agreement as an Excluded Asset in the APA; (2) knowledge of the APA's language regarding Ultrafem's default in June of 1998 and its failure to pay any further royalties; and (3) ReProtect's stated position that the 1996 Agreement was terminated as of the Ultrafem bankruptcy, Instead inexplicably and improperly delayed in filing its lawsuit until June of 2008 seeking a declaration of its rights under two agreements, the 1996 Agreement and APA, signed 10 or more years earlier.

---

[4]    Plaintiff has effectively had notice that this letter correspondence between Mary Frost and Thomas Moench (Moench Decl. Exhibits A and B) would be used by defendant in this 12(b)(6) motion.  Mary Frost, President of Instead, Inc., was the author and recipient of the letters attached to Dr. Moench's Declaration.  Because Instead has possession and knowledge of the letters, and relied in part on the contents of the letters in bringing this suit, the Court may properly consider the letters on this Motion to Dismiss.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Chambers*, 282 F.3d at 153.

[5]    Perhaps recognizing that its President's assertion was demonstrably false, Instead's Complaint does not allege that the 1996 Agreement was a Scheduled Asset of the Ultrafem bankruptcy acquired by Instead.  (Complaint, Moench Decl., Exh. A.)

# ARGUMENT

## PLAINTIFF'S CLAIMS AGAINST THE REPROTECT DEFENDANTS (COUNTS 1, 2, 3, 4, AND 6) SHOULD BE DISMISSED

This Court should dismiss Plaintiff's Complaint in its entirety against the ReProtect Defendants because the Ultrafem bankruptcy and the APA clearly excluded the 1996 Agreement and thus did not convey any rights from ReProtect to Instead. Plaintiff's argument that it has any rights to ReProtect's intellectual property is belied by the unambiguous language of the controlling documents. Further, Plaintiff's claims for a declaration of rights under the 1996 Agreement and the APA are barred by the statute of limitations.

## A.    Motion To Dismiss Standard

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.*, No. 07-CV-0400, 2008 WL 852787, at *3 (S.D.N.Y. Mar. 31, 2008) (citation and quotation omitted).

"Issues of contract interpretation are generally matters of law and are therefore suitable for disposition on a motion to dismiss." *Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*, No. 98 CIV 2570, 2000 WL 648162, at *3 (S.D.N.Y. May 19, 2000) citing *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991). "If the contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate." *Id.* (citation and

quotation omitted).

**B.**     **Counts 1, 2, and 3 of the Complaint Should be Dismissed**

Counts 1, 2, and 3 seek Declaratory Judgments on rights that Instead purportedly obtained under the 1996 Agreement.  The Court should dismiss these three counts because the unambiguous language of the APA states that the 1996 Agreement <u>was not an asset purchased by Akcess</u> during the Ultrafem bankruptcy proceedings.  Thus, while Instead alleges that Akcess "assigned the patent rights and non-competition agreement to Plaintiff" (Complaint Moench Decl. Exh. A at ¶ 2), <u>Akcess could not have assigned any of ReProtect's rights</u> under the 1996 Agreement because it had none to give.  Furthermore, the unambiguous language of the 1996 Agreement contradicts Plaintiff's allegation that provisions of the 1996 Agreement survive termination of the license.  In any event, any claim by Instead for a declaration of rights is barred by the statute of limitations.

1.  **Akcess, and consequently Instead, gained no rights to the 1996 Agreement during the Ultrafem bankruptcy proceedings.**

In the Ultrafem bankruptcy, the 1996 Agreement was an executory contract, traditionally defined as a contract under which there remained substantial performance by each party, the failure of one to perform excusing the performance of the other.  Under Section 365(b)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), Ultrafem could have assumed the 1996 Agreement by curing its defaults, compensating ReProtect for the actual pecuniary losses resulting from such defaults, and providing ReProtect with adequate assurances of future performance.  Had Ultrafem assumed the 1996 Agreement, it could have sought bankruptcy court permission to assign it under Bankruptcy Code Section 365(f), but Ultrafem would have had to assume and then assign the 1996 Agreement in its entirety, including any attendant burdens.  *See National Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 531-32

(1984). Ultrafem did not attempt to do this and the Complaint does not allege otherwise.

Moreover, the APA states unequivocally that the 1996 Agreement is an Excluded Asset from the APA. Paragraph 1.4 of the APA states: "The Assets shall not include [those listed in]: … Schedule 1.4, which are excluded Assets hereunder." Schedule 1.4 of the APA is titled "Excluded Assets" and lists all assets not sold to Akcess. The third listed excluded asset reads: "Agreement dated as of February 8, 1996 between Seller and ReProtect, LLC. Seller has not made payments required thereunder for the months of March, April, May, and June 1998, and Seller is in default thereunder." When Akcess assigned its rights under the APA to Instead, the 1996 Agreement was simply not part of the package assigned.

*Official Comm. of Unsecured Creditors of HMKR, Inc. v. Homemaker Indus., Inc. et al.* (*In re HMKR*), No. 99-B-10968 (RDD); No. 01-B-3625, 2003 WL 21696521 (Bankr. S.D.N.Y. July 18, 2003) concerns a fact situation very similar to the instant case. There, the Debtor, HMKR, filed for bankruptcy and entered into an Asset Purchase Agreement with A&M. *Id.*, at *1. The Asset Purchase Agreement stated unequivocally that the proceeds from a certain line of credit were "Excluded Assets" from the APA. *Id.* A&M, as the Buyer in the bankruptcy sale, and its successor, Homemaker Industries, Inc. brought suit for a declaratory judgment that the proceeds from the line of credit belonged to A&M as a result of the Asset Purchase Agreement. *Id.* The Court disagreed and held that "[a]bsent any agreement to the contrary, which does not appear in the record, HMKR [and not the purchaser A&M] would be entitled to the [proceeds]…." *Id.*, at *7.

Similarly, the APA in this case clearly states that the 1996 Agreement is an "Excluded Asset." Instead's Complaint alleges no agreement that contradicts the clear language of the APA. Like the proceeds in *HMKR*, the 1996 Agreement here did not pass to the Buyer, Akcess, nor to

its successor in interest Instead.

Further, other portions of the APA confirm that the 1996 Agreement did not pass to Akcess. Schedule 1.1(a) lists "Intangibles" to be acquired by Akcess, and includes Instead's "right, title and interest in and to the patents, copyrights, trademarks, service marks, and trade names, and all applications therefore…" listed in the Schedule. Significantly, Schedule 1.1(a) does not include the 1996 Agreement or any indication of any licenses or agreements with ReProtect. Additionally, the 1996 Agreement is listed as an Executory Agreement under APA Schedule G, and as such it was required to be either assumed or rejected in the bankruptcy. *See In re The Penn Traffic Co.*, 524 F.3d 373, 379 (2d Cir. 2008). Schedule 1.3(a) of the APA lists the "Assumed Liabilities" of the Buyer Akcess. Neither the 1996 Agreement, nor any license contained therein, is listed as an Assumed Liability in Schedule 1.3. Rather, the 1996 Agreement is listed as an Excluded Asset in Schedule 1.4. Its presence in Schedule 1.4 and absence in Schedule 1.3 and Schedule G show, in the plain language of the APA, that the 1996 Agreement was not assumed, but rejected.

Count 3 against the ReProtect Defendants seeking a declaration of rights under the 1996 Agreement non-compete agreement also fails to state a claim for the same reason as Counts 1 and 2. As part of the 1996 Agreement, the non-compete agreement also did not pass to Akcess.

In short, the plain language of the APA controls and bars Instead's claims. The 1996 Agreement did not pass to Akcess or any of its successors, including Instead. Instead's claim for a declaratory judgment of its rights based on the 1996 Agreement fails as a matter of law.

## 2. The 1996 Agreement does not confer any licenses that survive termination of the license.

With no basis under the APA to argue rights under the 1996 Agreement, Instead seems to allege that the Cup License, the Gel License, and the Non-Compete Agreement from the 1996

Agreement somehow survive termination of the 1996 Agreement.  Without any specific citation

to the 1996 Agreement, Instead baldly alleges: "The License Agreement expressly provides that

the Patent Rights and Non-Compete Agreement survive termination of the License Agreement."

(Complaint, Moench Decl. Exh. A ¶ 25).  But the unambiguous language of the 1996 Agreement

belies Instead's allegations.

No licenses from the 1996 Agreement survived termination of the Agreement.  Section

IV(d) of the 1996 Agreement states:

> (d)    …. In addition, <u>upon termination of this Agreement</u> for any reason, <u>Ultrafem shall have the right</u>, in its sole discretion, <u>to continue the licenses granted by ReProtect</u> pursuant to paragraph I(a) [the R&D License, the Cup License, and the Gel License] hereof <u>with respect to any or all inventions, products, uses or application</u> which at the date of such termination are licensed by ReProtect to Ultrafem application <u>which at the date of such termination are licensed by ReProtect to Ultrafem</u> hereunder <u>and either</u> (i) <u>with respect to which an application has been submitted to the FDA regarding Phase II clinical trials</u> or (ii) <u>which are being marketed by Ultrafem</u> anywhere in the world, <u>in consideration</u> of <u>the payment</u> by Ultrafem to ReProtect <u>of the royalties provided in this Agreement</u> with respect to such product.

(1996 Agreement, Moench Decl. Exh. D, ¶ IV(d) (emphasis added).)  As this section makes clear,

the survival of any license rights post-termination of the 1996 Agreement is expressly limited to

the specified circumstances, none of which occurred.  Specifically, Instead does not, and can not,

allege in their Complaint that Ultrafem marketed <u>any</u> product as a result of this Agreement using

licenses from ReProtect.  Additionally, Instead does not, and can not, allege in their Complaint

that an application was submitted to the FDA for a Phase II clinical trial during the term of the

1996 Agreement.  Finally, Instead does not, and can not, allege in their Complaint that Ultrafem

(or the purchasers of limited, identified Ultrafem assets, Akcess or Instead) continued to make

monthly payments to ReProtect as required by Section I(b)(i).  Even if any rights under the 1996

Agreement survived its termination, those rights, if any, would have belonged to Ultrafem, not Akcess or Instead.

Regarding the Non-Compete Agreement, the 1996 Agreement also unambiguously clarifies that any non-compete would not survive termination of the 1996 Agreement. The 1996 Agreement states that the Non-Competition Period shall end on the latest to occur of (i) two years after the earlier of the end of the Term or after termination of this Agreement pursuant to paragraph IV(b) or (c) hereof; and (ii) the date Ultrafem does not have any obligation to pay any royalties pursuant to either paragraph I(b) or paragraph I(c). (1996 Agreement, Moench Decl. Exh. D, ¶ VI(e).) Ultrafem no longer had any obligation to pay royalties to ReProtect, nor did Ultrafem or the purchasers of limited, identified Ultrafem assets, Akcess and Instead, pay any royalties to ReProtect, following the Ultrafem bankruptcy. Any surviving Non-Competition Period from the 1996 Agreement would have ended years ago, no later than 2 years after the Ultrafem bankruptcy.

### 3. Instead's claims are barred under the statute of limitations.

Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred if relief on a direct claim based on such rights would also be barred. *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992). Under controlling New York law[6], the statute of limitation applicable to claims for breach of contract is six years. *Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122, 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004). Since Instead's declaratory judgment cause of action arises from the alleged contractual relationship between ReProtect and Akcess through the APA, it too is governed by a six year statute of limitations. *See id.* Under New York law, a breach of contract cause of action accrues

---

[6] Both the 1996 Agreement and the APA both state that New York law is to govern the agreements. (*See* Moench Decl. Exh. C at ¶ 21 and Exh. D at Section X(h)).

at the time of the breach.  *Cunningham v. Insurance Co. of N. Am.*, 521 F. Supp. 2d 166, 171 (E.D.N.Y. 2006).

The APA clearly states that Ultrafem had been in default of the 1996 Agreement for the months of March, April, May, and June of 1998.  Neither Akcess nor Instead made any effort to rectify that default.  Any declaration of rights under the 1996 Agreement should have occurred upon the signing of the APA during the pendency of the Ultrafem bankruptcy.  Akcess and Instead were thus obligated to bring any declaratory judgment of their rights no later than 2004, six years after the signing of the APA.  *Cf, Porwick*, 2004 WL 2793186, at *4 (statute of limitations "clock commences to run once plaintiff receives the insurance contracts regardless of when plaintiff discovered the breach or mistake").

Plaintiff has no good explanation for its inexcusable delay in bringing suit.  Instead obviously knew that ReProtect was developing the Acidic Buffer technology.  In February and March of 2003, ReProtect clearly communicated to Instead through correspondence that the 1996 Agreement had been terminated as of the Ultrafem bankruptcy. (Moench Decl. Exh. B.  At the time of that correspondence, the statute of limitations would not have barred Instead's claims (assuming it had any) had it chose to act.  But it did not.  Rather, Instead sat on whatever rights it might have had and waited five more years after the 2003 correspondence to bring suit against ReProtect.  The Court should stop Instead's efforts to interfere with ReProtect's business through this baseless, time-barred litigation.[7]

---

[7] Although not a basis for the current motion, if Instead had any valid claims against the ReProtect Defendants, such claims would be barred by laches.  The principals of Instead have been well aware for years of the ReProtect Defendants' position that Instead has no rights under the 1996 Agreement.  Instead has been following ReProtect's progress over the years in developing products for commercialization and ReProtect's substantial investment therein.  Representatives of Instead have attended medical conferences at which ReProtect's executives have reported on their research and development efforts that Instead now claims belong to it.

**C.    Count 4 of the Complaint Should be Dismissed**

    1.  **There can be no breach of the Non-Compete Agreement because the agreement was not transferred to Akcess or Instead.**

Instead's claim of anticipatory breach of the non-compete agreement by ReProtect Defendants also fails to state a claim and should be dismissed.  "An anticipatory breach is a definite and unconditional declaration by a party to an executory contract – through word or conduct – that he will not or cannot render the agreed upon performance....The term anticipatory breach is self-defining as one which occurs before the time of performance and while the contract is in existence. *Penthouse Int'l Ltd. v. Dominion Fed. Sav. & Loan Assoc.*, 855 F.2d 963, 977 (2d Cir. 1988) (citation and quotation omitted).  Because (1) the non-compete agreement was between ReProtect and Ultrafem as part of the 1996 Agreement and (2) the 1996 Agreement did not pass to Akcess (and thus to Instead), there can be no anticipatory breach, because there is no contract between ReProtect and Instead that could be breached.

**D.    Count 6 of the Complaint Should be Dismissed**

    1.  **Instead's Complaint fails to state a claim against ReProtect for tortious interference with a contract.**

To state a claim for tortious interference with contract under New York law, a plaintiff must allege five elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of a breach of that contract without justification; (4) actual breach of the contract; and (5) damages to plaintiff. *Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC*, No. 07 Civ 7998, 2008

---

(Moench Decl. ¶ 6.)  Because this is a Rule 12(b)(6) motion, the ReProtect Defendants are not moving to dismiss on this ground, but would certainly vigorously assert the laches defense should the Court deny the instant motion. *See Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, No. 07-2933, 2007 WL 2398801, at *4 (S.D.N.Y. Aug. 15, 2007) (granting motion to dismiss for laches when Plaintiff inexcusably waited nearly seven years to bring his trademark infringement claim against defendant).

WL 1710910, at *2 (S.D.N.Y. April 10, 2008) citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).

Instead's Complaint fails to state a valid claim for tortious interference with contract because it does not allege any breach of the APA between Ultrafem and Instead's assignor Akcess. "New York law requires that to plead tortious interference with contract properly, the plaintiff must allege 'breach' of an existing contract." *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 253 (S.D.N.Y. 2001). Paragraph 76 of the Complaint states that "Ultrafem has in fact committed a material breach of the Purchase Agreement *if* Ultrafem did not assign Plaintiff the Patent Rights and/or assign Plaintiff the Non-Compete Agreement." (Moench Decl. Exh. A, emphasis added.) The Purchase Agreement or APA clearly on its face does not assign Instead any rights from the 1996 Agreement between ReProtect and Ultrafem. As discussed above, the 1996 Agreement is explicitly listed in the APA as an "Excluded Asset."

Further, Instead's Complaint fails to state how ReProtect procured the alleged breach of the APA or what damages Instead suffered as a result of ReProtect's alleged interference. Since there was no breach of the APA, Instead's failure to adequately plead the procurement and damages elements of tortious interference is not surprising. But Instead has utterly failed to plead any "wrongful means," a necessary element of the claims. *See Darby Trading*, 2008 WL 852787, at *16. Without any such allegations against ReProtect, Instead's claim for tortious interference fails to state a claim for this additional reason.

2. **Instead's tortious interference claim is barred by the statute of limitations.**

In New York, the statute of limitations for a tortious interference with contract claim is three years. *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002), citing N.Y.C.P.L.R. § 214(4) (McKinney 1990). The limitations period begins to run on the date injury is sustained. *Id.*

Instead's cause of action for tortious interference is barred by the statute of limitations. By 2003, Instead knew unequivocally that ReProtect considered the 1996 Agreement terminated. Even if this claim arose at that time (and not years earlier) the statute of limitations on such a claim expired in 2006 and is long gone.

## CONCLUSION

For the reasons set forth above, the motion of defendants ReProtect, Inc., Dr. Richard Cone, and Dr. Thomas Moench to dismiss with prejudice Counts 1-4, & 6 of the Complaint in their entirety should, in all respects, be granted.

Dated: July 31, 2008
      New York, NY

Respectfully submitted,

**HOGAN & HARTSON LLP**

By: _____/s/_____
    Eric J. Lobenfeld (EL-4560)
    Dillon Kim (DK-4121)
    **HOGAN & HARTSON LLP**
    875 Third Avenue
    New York, NY 10022
    Phone: (212) 918-3000
    Fax: (212) 918-3100

    *Attorneys for Defendants*
    *ReProtect, Inc., Dr. Richard Cone,*
    *and Dr. Thomas Moench*